UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/12/20

UNITED STATES OF AMERICA

V.                                                    10 CR 391-19 (CM)

NAQUAN GAYLE,

          Defendant.

----------------------------------------------------------x

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

     Naquan Gayle pleaded guilty to participating in a conspiracy to distribute and possess

with intent to distribute 50 grams and more of crack cocaine, in Newburgh, New York, in

violation of 21 U.S.C. §§ 846, 812 and 841(a)(1) & (b)(1)(A). After crediting Gayle for the time

he had served in state prison for conduct related to the federal case, and retroactively applying

statutory changes made to the applicable mandatory minimum sentences in narcotics cases,

Gayle ultimately received a sentence of 38 months and 6 days' imprisonment, to be followed by

five years' supervised release.

     After his release from prison, Gayle proceeded to violate the conditions of his supervised

release on numerous occasions; the last time for selling heroin, resulting in his return to prison

for two years. He is currently serving his last month of that sentence—his projected release date

is September 9, 2020.

     Before the Court is Gayle's motion for compassionate release filed pursuant to 18 U.S.C.

§3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), P.L. 115-391. Gayle claims that

1

FCI Schuylkill, where he is currently incarcerated, and the Brooklyn House Residential Reentry Center ("RRC"), where he says he is scheduled to be transferred this week, are rife with COVID-19 cases, and that his family history of diabetes and hypertension vicariously places him at an increased risk of suffering a severe outcome should he contract the virus.  Gayle does not claim to suffer from either of these diseases. Gayle also claims that he "is urgently needed by his family members outside the prison—including his partner who is an essential healthcare worker, his three-year old daughter, and his mother who suffers from drug dependency and related health conditions—who, without his support, are struggling to safely navigate the challenges posed by the pandemic." Gayle Memo. at 1.

The Government opposes the motion arguing that Gayle (1) has failed to establish extraordinary and compelling reasons for compassionate release, (2) a reduction in sentence would not be consistent with the applicable Section 3553(a) factors, and (3) Gayle continues to pose a danger to society.

The motion is denied.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. Once such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

2

earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

Once a defendant has exhausted administrative remedies, with respect to the substantive determination, and in addition the statutory requirement that the Court consider the factors set forth in Section 3553(a), the United States Sentencing Guidelines contain a provision, Section 1B1.13, applicable to motions for sentencing reductions pursuant Section 3582(c)(1)(A). That section provides, in relevant part, that a reduction in sentence may be appropriate if the Court determines that--

(1)    (A) Extraordinary and compelling reasons warrant the reduction; or

(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2)    The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3)    The reduction is consistent with this policy statement. U.S.S.G. § 1B1.13.

Subsection (1)(B) is inapplicable. With respect to subsection (1)(A), which relates to "extraordinary and compelling reasons" warranting a reduction, the Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See id.* § 1B1.13 comment (n.1). The only relevant provision here reads as follows:

(A)    Medical Condition of the Defendant.—

(i)    The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

3

    (ii)    The defendant is—

        (I)    suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

As the proponent of the Motion, Gayle bears the burden of proving that "extraordinary and compelling reasons" exist and that he is entitled to the relief he seeks. *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

It is important to note that a defendant who meets all the criteria for compassionate release consideration listed above is not thereby automatically entitled to a sentence modification. He is simply eligible for a sentence modification. The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

Gayle's Motion in the Bureau of Prisons

On July 3, 2020, Gayle's attorney wrote to the warden of FCI Schuykill, requesting that Gayle be released on compassionate release grounds. (Motion, Ex. A). Thirty days now having elapsed with no response from the warden, Gayle has successfully exhausted his administrative remedies and his present motion for compassionate release is properly before the Court.

4

### Gayle's Motion Before this Court

Gayle has presented no legally cognizable extraordinary and compelling reasons for his release. Gayle has no health problems.[1] Instead, he suggests that his "family history of diabetes and high blood pressure," places him "in a CDC-designated high-risk group for complications from COVID-19." (Motion 2; *see also* Motion 5–6, 20). To be clear: Gayle has neither diabetes[2] nor high blood pressure.[3] The CDC says nothing about people with family histories of diabetes or high blood pressure, or, for that matter, people who are at risk of diabetes or high blood pressure; to the contrary, the CDC only explains that people who *actually have* specific subsets of diabetes and high blood pressure—namely, Type 2 diabetes mellitus and pulmonary hypertension—as being at "increased risk for severe illness from COVID-19."[4]

As for Gayle's argument that Black males such as himself "faced higher infection and death rates [from COVID-19] than most other demographic cohorts;" troubling though that may be, we have demonstrable evidence in Gayle's medical records that Gayle (the individual) does not have any of the risk factors associated with serious COVID-19 outcomes.

Regarding Gayle's concerns about the threat of COVID-19 within BOP facilities, (Motion 6–7, 10–17), the current COVID statistics for FCC Schuylkill (where he is currently)

---

[1] At the time of Gayle's initial sentencing, he reported that "he [wa]s in good health, d[id] not have a history of health problems, ha[d] never been hospitalized and [wa]s not currently taking any medications." (PSR ¶ 80).

[2] When last tested, on June 4, 2020, Gayle's hemoglobin A1C was 5.8. (Gayle 19–20 Medical Records at 24). This barely puts him in the "pre-diabetic" level. *See* American Diabetes Association, Understanding A1C, https://www.diabetes.org/a1c.

[3] While Gayle tested as having marginal stage one hypertension in July 2019 (Gayle 18–19 Medical Records at 1, showing 138/78), he also reported particular stress at the time, explaining to the doctors that his blood pressure was "high due to eating soups and family was just shot," but also said he would act to reduce the blood pressure. (*Id.*). By March of this year, Gayle denied any hypertension. (Gayle 19–20 Medical Records at 13).

[4] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

and Brooklyn House RCC (where he is purportedly being moved to) suggest BOP officials in those facilities have taken successful measures to minimize the spread of the virus. Both facilities report no current cases of COVID-19 among its inmates or staff.[5] Having said that, the Court does not read these statistics to suggest the risk of exposure to the virus in those facilities is zero.[6] Defendant's hyperbole aside, the Court accepts that the risk of contracting COVID-19 in a BOP facility is significant and that—in most cases—it better to be on the sunny side of the prison wall during a pandemic. And it is in that context that Gayle's related argument that he "is experiencing anxiety due to the uncertainties, disruptions, and peril posed by the COVID-19 crisis in the prison system" is understandable, but not an extraordinary and compelling reason to release him from his sentence.

Accordingly, Gayle has failed to demonstrate extraordinary and compelling reasons for a reduction in his sentence.

Even if Gayle had demonstrated extraordinary and compelling reasons for a reduction in his sentence—and he has not—the Section 3553(a) factors militate against release. Gayle is an inveterate drug dealer. At the age of 18, he picked up his first felony—attempted criminal possession of a controlled substance in the fifth degree—and, despite being given chance after chance, sold drugs over and over, ensuring that just about his entire life since then was spent either in custody or on court-ordered supervision. Neither custody nor supervision, though, deterred Gayle from continuing to sell drugs, as he simply became a bigger and bigger drug dealer. Indeed, in Gayle's latest narcotics case—the predicate for the violation of supervised

---

[5] *See* https://www.bop.gov/coronavirus/ (last viewed August 11, 2020, at 3:20 p.m.).

[6] After dealing with numerous compassionate release motions over the last several months, I have learned that BOP statistical reporting for a particular facility does not always present a clear picture of, or necessarily comport with the actual infection rate at that facility.

6

release in this case—he was caught with over a thousand baggies of heroin and nearly $2,500 in cash.

It is admirable that defendant wants to return to his family as soon as possible in order to help them through these difficult times. Given the number of times I saw Mr. Gayle on supervised release violations, the Court is somewhat skeptical about whether his family responsibilities can keep Gayle from again returning to his old ways. They were not enough to stop Gayle from selling massive quantities of heroin while on supervised release -- and keeping his stash in a car right outside the house where he lived with his then three-week-old child. Perhaps Gayle has finally learned his lesson. One can only hope.

The motion is denied.[7]

This constitutes the decision and order of the Court.

Dated: August 12, 2020

Colleen McMahon
Chief Judge

BY ECF TO ALL PARTIES

---

[7] That said, we are talking about whether Gayle should serve his last month in a half-way house. While there is no basis for this Court to grant Gayle's compassionate release motion, the BOP has it within its authority to allow Gayle to serve the remainder of his sentence in home confinement. *See* Office of the Attorney General, Memorandum for Director of Bureau Prisons: Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020), https://www.justice.gov /file/1262731/download; *see also United States v. Lewis Stahl*, 18 Cr. 694 (RA), Declaration of Jennifer A. Broton ¶ 19 (Dkt. No. 65-1), April 22, 2020, Department of Justice Memorandum prioritizing for home confinement inmates who have served 50% or more of their sentences or have 18 months or less remaining on their sentences and have served 25% or more of their sentences.

The Court would not be offended if BOP exercised that authority.

7